**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOSEPH ARUANNO,<br><br>　　　　　　　　　　Petitioner,<br><br>　　　v.<br><br>STATE OF NEW JERSEY, et al.,<br><br>　　　　　　　　　　Respondents. | Case No. 21cv5895 (EP)<br><br>**OPINION** |

**PADIN, District Judge.**

　　　Petitioner Joseph Aruanno petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his involuntary commitment under the New Jersey Sexually Violent Predator Act. D.E. 1 ("Pet."). He also moves for reconsideration of this Court's Order denying the appointment of pro bono counsel. D.E. 20. For the reasons set forth below, Petitioner's Section 2254 petition will be **DENIED** as procedurally defaulted, Petitioner's motion for reconsideration will be **DENIED**, and Petitioner will be **DENIED** a certificate of appealability.

**I.　BACKGROUND**

　　　Petitioner is currently civilly committed to the Special Treatment Unit ("STU") in Avenel, New Jersey, pursuant to New Jersey's Sexually Violent Predator Act ("SVPA"), N.J.S.A. § 30:4-27.24 *et seq*. Petitioner's Section 2254 petition does not challenge the validity of any criminal conviction; instead, it alleges that he has been denied yearly commitment reviews as required by the SVPA and has been denied the appointment of counsel during his appeals. Pet. at 6.

　　　Petitioner was civilly committed in 2004 after two sex offense convictions:

> In 1994, while in Florida, he exposed himself to two adolescent girls as they were walking home from school and engaged in lewd conduct in their presence. As a result of this incident, Aruanno pled

guilty to second-degree lewd conduct, and was sentenced to ten years' probation. Just two years later, in 1996, Aruanno sexually molested an eight-year-old girl who had been playing on the front steps of her house in Wildwood, New Jersey. A jury convicted Aruanno of second-degree sexual assault, and he was sentenced to ten years in prison, and disqualification from parole for five years. The Appellate Division of the New Jersey Superior Court affirmed the conviction and sentence. The New Jersey Supreme Court denied certification.

In April 2004, while Aruanno was still serving his prison sentence, the State of New Jersey (hereinafter "the State") filed a petition to involuntarily commit Aruanno pursuant to the [SVPA]. Partially due to Aruanno's repeated insistence that he be appointed new counsel, a hearing on the petition was not held until May 9, 2005, and Aruanno was detained until that time pursuant to a temporary commitment order.

At the commitment hearing, the State presented the testimony of Dr. Vivian Shnaidman, a psychologist. Dr. Shnaidman testified that Aruanno was a chronic paranoid schizophrenic, but her diagnosis explicitly ruled out diagnoses of exhibitionism and pedophilia. Nevertheless, Dr. Shnaidman opined that Aruanno's schizophrenia, when combined with his previous violent conduct, created a "very high" risk of future violence. In particular, because Aruanno refused to take psychotropic medication to treat his schizophrenia, he would continue to suffer from psychotic delusions which would render sex offender treatment useless. According to Dr. Shnaidman, Aruanno would have serious difficulty controlling his sexually predatory behavior without undergoing treatment for his schizophrenia.

Aruanno testified on his own behalf at the hearing. He denied committing either the Florida or the New Jersey offense, and testified that he believed the State had filed the commitment petition in retribution for his decision to go to trial for the New Jersey offense, rather than accepting a deal to plead guilty. Aruanno was also given the opportunity to present the testimony of his own psychologist, but after meeting with Aruanno, the psychologist reported that he was "unable to render an opinion to a reasonable degree of medical certainty."

The state court found that Aruanno suffered from a mental abnormality which created "substantial, significant, severe difficulty controlling his sexually violent behavior," and granted the State's petition for involuntary commitment. Aruanno appealed the order, and the Appellate Division affirmed.

*Aruanno v. Hayman*, 384 F. App'x 144, 145 (3d Cir. 2010) (internal citations omitted). *See also In re Civil Commitment of J.A.*, 2007 WL 609284 (N.J. Super. Ct. App. Div. 2007).

"Pursuant to the SVPA, [Petitioner] is afforded annual review hearings at which the State must reestablish each prong of the SVPA." D.E. 10-1 at 7 (citing N.J.S.A. § 30:4-27.35). According to the record produced by Respondents, Petitioner's last hearing was on June 28, 2016. D.E. 10-3. That hearing had originally been scheduled for December 2015 but "was adjourned at the request of Petitioner's counsel. Petitioner's hearing was adjourned once again in March 2016. Unhappy with counsel's adjournments, Petitioner filed an appeal on March 15, 2016, seeking to challenge the adjournments." *Aruanno v. Yates*, 2019 U.S. Dist. LEXIS 39022, at *2 (D.N.J. Mar. 11, 2019). The trial court conducted the hearing while that appeal was pending. *Id.* "Because Petitioner had received the relief he sought — his annual review hearing — the State moved to dismiss his appeal of the adjournments in February 2017, and the Appellate Division granted that motion and dismissed Petitioner's appeal of the adjournments on March 22, 2017. Unhappy with this result, Petitioner filed a petition for certification on March 28, 2017." *Id.* Petitioner filed a Section 2254 petition challenging the result of the hearing, which the Court (J., Linares) dismissed as procedurally defaulted on March 11, 2019. *Id.* The Third Circuit then denied a certificate of appealability. *Aruanno v. Adm'r Special Treatment Unit*, 2019 U.S. Dist. LEXIS 28728, at *1 (3d Cir. Sept. 9, 2019).

"On July 13, 2018, in advance of his then-upcoming annual review hearing under the SVPA, J.A.[1] advised the trial court that he intended to file a motion for miscellaneous relief, including termination of his civil commitment." D.E. 10-12 ¶ 4. On August 15, 2018, the Essex

---

[1] References to "J.A." and "JA" are to Petitioner.

3

County trial court heard oral argument on the motion and issued an order denying in part and deferring in part Petitioner's motion for a review hearing. *See* D.E. 10-4 ¶¶ 2-6. Petitioner's annual review was scheduled for the end of August. *See* D.E. 10-12 ¶¶ 6-8. "On August 28, 2018, the parties appeared in court for J.A.'s annual review hearing. Before the hearing began on August 28, 2018, J.A. requested an adjournment, advising the court and the State that he now consented to be evaluated by the State's expert psychiatrist and that he wished time to retain his own expert." *Id.* ¶¶ 7-8. "The trial court granted J.A.'s adjournment request, setting a control date of October 1, 2018, at which time the parties would report on the status of the expert evaluations." *Id.* ¶ 9.

Petitioner filed a motion for miscellaneous relief, including termination of his civil commitment, in October 2018. *Id.* ¶ 10. The trial court heard oral argument on November 7, 2018. *Id.* ¶ 11. On December 13, 2018, the trial court issued an order on directing the Department of Corrections to provide Petitioner with certain toiletry items and directing the medical department to evaluate whether Petitioner had a medical need for a special diet and mattress. D.E. 10-5. The order also denied Petitioner's request to be released based on his argument that "his judgment of conviction that provides for Community Supervision for Life (CSL) . . . supersedes his civil commitment under the [SVPA]" as well as his argument that "prior orders were entered that the Special Treatment Unit (STU) or the Department of Corrections (DOC) failed to timely comply with . . . ." *Id.* at 3-4. The order did not reference the annual review.

The parties appeared before the trial court on January 9, 2019 to schedule the annual hearing. D.E. 10-12 ¶ 12. At that time, Petitioner "advised the court that he was considering discharging his attorney and wanted time to find another attorney." *Id.* ¶ 13. The trial court ordered the parties to appear on January 24, 2019 to report on the status of the annual review, but

Petitioner "refused to appear on January 24, 2019, and he refused to advise the court or State of whether he was still seeking replacement counsel." *Id.* ¶¶ 14-15.

On June 1, 2019, Petitioner filed an appeal, Docket No. A-4336-18T3. D.E. 10-6. He stated he was seeking review for "being refused yearly review on 7-15-18." *Id.* at 4. He asked that the New Jersey Appellate Division accept the late appeal "since counsel has filed/refused to file the appeal, . . . since he is to blame for the key issue on appeal, which is allowing the court to deny petitioner a yearly review on 7/15/18, then a rescheduled hearing set for 8/1/18, as discussed in the attached motion dated 8/2/18, also on appeal here, and thus petitioner should not be penalized for the incompetence and criminal neglect of counsel." *Id.* at 7. The Appellate Division notified Petitioner on June 11, 2019 that his notice of appeal was deficient because he did not attach a copy of the June 15, 2018 judgment or order and did not comply with the court format. D.E. 10-7. Petitioner responded on June 21, 2019, arguing that he did not have an order or judgment because the trial court had refused to hold the annual review hearing. D.E. 10-8. "And secondly, as to my/our right to counsel I ask that this court force the state to comply with its ruling and my right to counsel and forward this appeal to the attorney. Though in any case I have completed the enclosed form you sent me to the best of my ability and (re)submit it." *Id.*

The Appellate Division issued another order of noncompliance on June 26, 2019, again asking for "a copy of the July 15, 2018 Order." D.E. 10-9. "If the deficiency noted above is not corrected within 15 days, the appeal will be subject to dismissal without further notice." *Id.* Petitioner replied on July 12, 2019: "I have made clear to this court twice, this being the third time, that what is on appeal is being denied a yearly review as mandated by law and as had made clear by this court in NUMEROUS other appeals that we are ENTITLED to a yearly review. Where the lower court has yet once again totally disregarded me here, now to the degree of criminal neglect,

5

so obviously there is no ORDER to attach!" D.E. 10-10.  On August 12, 2019, the State filed opposition to Petitioner's request to file an appeal out of time, arguing that "[t]he parties are currently scheduled to appear on August 16, 2019 to report on the status of J.A.'s commitment." D.E. 10-12 ¶ 16.  The Appellate Division denied Petitioner's request to file an appeal out of time and dismissed Petitioner's appeal on August 23, 2019.  D.E. 10-13.  Petitioner moved for reconsideration of the order on October 30, 2019.  D.E. 10-21.  The Appellate Division denied the motion on November 25, 2019: "This appeal was dismissed not for a lack of a final order, but rather because movant failed to exhaust administrative remedies as set forth in respondent's August 19, 2019 certification, that was served in reply to appellant's last motion to file as within time." *Id.*

Simultaneously, Petitioner moved for reconsideration in the Appellate Division and filed a letter of appeal in the New Jersey Supreme Court on October 28, 2019, asserting that he had just received the Appellate Division's decision.  D.E. 10-16.  The Supreme Court issued an order directing Petitioner to a submit notice of petition for certification, a motion for leave to file as within time, and an affidavit regarding his financial status on December 10, 2019.  D.E. 10-17.  It also directed Petitioner to file a formal motion for counsel if he wanted the court to appoint counsel. *Id.*  The Supreme Court issued a second deficiency notice on January 9, 2020.  D.E. 10-18.  "As of today, this office does not have record of receiving papers curing the deficiencies noted above.  Failure to correct the noted deficiencies may result in the dismissal of this matter." *Id.*  It issued a final notice on February 11, 2020.  D.E. 10-19.  The Supreme Court dismissed the appeal for failure to comply with the court rules on May 27, 2020.  D.E. 10-20.

Currently pending before this Court is Petitioner's Section 2254 petition, which he filed on March 19, 2021.  Pet.  This Court (J., Cecchi) administratively terminated the petition on April 30,

6

2021 as Petitioner had not paid the filing fee or submitted an *in forma pauperis* application. D.E. 2. Petitioner then filed an *in forma pauperis* application, D.E. 3, which the Court (J., Cecchi) granted on February 14, 2022, D.E. 8. Respondents answered on March 29, 2022. D.E. 10 ("Opp'n"). Petitioner replied on April 22, 2022. D.E. 12 ("Reply").

Petitioner subsequently moved for the appointment of counsel. D.E. 16. This Court denied the motion without prejudice on February 9, 2023.[2] D.E. 19. Petitioner now also moves for reconsideration of that order. D.E. 20.

## II.  LEGAL STANDARDS

### A. Habeas Petitions Pursuant to 28 U.S.C. § 2254

Pursuant to 28 U.S.C. § 2254(a), a district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." With respect to any claim adjudicated on the merits by a state court, the writ shall not issue unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and

---

[2] This matter was reassigned to the undersigned on June 28, 2022. D.E. 13.

nevertheless arrives at a result different from [the Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). "[A] state-court decision is an unreasonable application of [Supreme Court] clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." *White v. Woodall*, 572 U.S. 415, 426 (2014). "This means that a state court's ruling must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Shoop v. Hill*, 139 S. Ct. 504, 506 (2019) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Lastly, a district court must presume that the state court's factual findings are correct unless the petitioner has rebutted the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### B. Motions for Reconsideration

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). To prevail on a motion for reconsideration, the movant must demonstrate: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court… [rendered the judgment in question]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *U.S. ex rel. Shumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 848-49 (3d Cir. 2014) (citing *Max's Seafood ex rel. Lou—Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). Mere disagreement with a district court's decision is not a basis for reconsideration. *United States v. Compaction Sys. Corp.*, 88 F. Supp. 2d 339, 345 (D.N.J. 1999).

8

Moreover, relief on a motion for reconsideration is to be granted only sparingly. *United States v. Jones*, 158 F.R.D. 309, 314 (D.N.J. 1994).

### III.   DISCUSSION

#### A. Effect of Procedural Default Bar on Petitioner's 28 U.S.C. § 2254 Petition

First, Respondents argue that Petitioner's claims are procedurally defaulted. Opp'n at 6-7. A federal court reviewing a Section 2254 petition "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). "Because this Court has no power to review a state law determination that is sufficient to support the judgment, resolution of any independent federal ground for the decision could not affect the judgment and would therefore be advisory." *Id.* The procedural default doctrine "applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement. In these cases, the state judgment rests on independent and adequate state procedural grounds." *Id.* at 729-30.

Here, the New Jersey Appellate Division and the New Jersey Supreme Court appeal denials rested solely on Petitioner's procedural flaws grounded in state law. Specifically, the Appellate Division dismissed Petitioner's state appeal due to "movant['s failure] to exhaust administrative remedies…." D.E. 10-21. Thereafter, the Supreme Court dismissed Petitioner's request for certification due to his noncompliance with court orders. D.E. 10-20. These are clear statements that the New Jersey state courts denied Petitioner's appeals on state procedural grounds rather than federal law.

"'Out of respect for finality, comity, and the orderly administration of justice,' federal courts may excuse procedural default only if a [petitioner] 'can demonstrate cause for the default

9

and actual prejudice as a result of the alleged violation of federal law [or that a miscarriage of justice would occur absent review].'" *Shinn v. Ramirez*, 142 S. Ct. 1718, 1733 (2022) (quoting *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Coleman*, 501 U.S. at 750); *Cristin v. Brennan*, 281 F.3d 404, 414 (3d Cir. 2002). "To establish cause, the prisoner must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To establish prejudice, "[t]he habeas petitioner must show 'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Murray*, 477 U.S. at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)) (emphasis and omission in original).

None of Petitioner's arguments establish cause and actual prejudice nor that a miscarriage of justice would occur sufficient to overcome his procedural default. Petitioner asserts that the procedural default argument is an "attempt to avoid the KEY issue which is that on July 10, 2018, JA was informed by counsel that the court had yet once against postpone a trial date set for that day because the state's doctor . . . WAS NOT THERE AND COULD NOT MAKE IT THAT DAY, etc., . . . ." Reply at 2. He alleges this was false and the doctor was in fact testifying in a different hearing. *Id.* He further states that the rescheduled hearing date (June 26, 2018) was canceled because the doctor's mother had passed away, but alleges this excuse was also false. *Id.* Petitioner claims that the New Jersey state courts denied him the right to counsel during his appeal despite his claim that he is "ENTITLED to counsel on appeal, which is NOT dependent upon the filing of applications or motions for counsel, where it is an automatic right, etc . . . . And where despite that, in order to attempt to perfect the appeal and address the crimes JA did in fact file a MOTION FOR COUNSEL where the court denied it." *Id.* at 5 (ellipse in original). "[] JA spoke


with case manager . . . who said they use[d] to have a pro bono program but has not been the case in years, and do not appoint counsel. And where JA was instructed to contact the Public Pretenders[3] Office for counsel, which he did, and who never complied And for which yet once against only serves to victim-blame!" *Id.* "In closing it is clear that JA was denied hearings, counsel, etc., despite zealously requesting and DEMANDING them. That it was the court and Public Defenders who FAILED TO COMPLY, or REFUSED TO COMPLY." *Id.* at 6.

Based on the above, Petitioner has not articulated any cogent reasons why his procedural default should be excused nor can the Court deduce any such reasons. Notably, even if Petitioner had filed a motion for the appointment of counsel with the New Jersey Supreme Court, he still did not file the other documents that the court required in order to proceed with his appeal. D.E. 10-20. The Supreme Court notified Petitioner three times of the required documents for his appeal. *See* D.E. 10-17, D.E. 10-18, and D.E. 10-19. It was Petitioner's failure to comply with the procedural requirements of the Supreme Court that caused his appeal to be dismissed. D.E. 10-20. Therefore, Petitioner's procedural default is not excused. Accordingly, the Court will deny Petitioner's Section 2254 petition.

**B. Reconsideration of Order Denying Petitioner's Request for Appointment of Counsel**

Moreover, because Petitioner's Section 2254 petition will be denied due to his procedurally defaulted claims, it follows that Petitioner's motion for reconsideration of the court's Order declining to appoint pro bono counsel will also be denied. As noted above, *supra* Section II.B., motions for reconsideration are granted only "to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp.*, 779 F.2d at 909. There is no such error of law or fact

---

[3] The Court underscores that Petitioner addresses the Public Defender's Office as "Public Pretenders Office," not the Court.

or newly discovered evidence that merits granting Petitioner's motion for reconsideration. And in light of Petitioner's procedurally defaulted claims, it is also unnecessary to appoint counsel. Accordingly, the Court will deny Petitioner's motion for reconsideration.

## IV.   CERTIFICATE OF APPEALABILITY

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that an appeal may not be taken to the court of appeals from a final order in a Section 2254 proceeding unless a judge issues a certificate of appealability on the ground that "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court held in *Slack v. McDaniel* that "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." 529 U.S. 473, 484 (2000).

Petitioner will be denied a certificate of appealability because jurists of reason would not find it debatable that dismissal of his Section 2254 petition due to procedural default is correct.

## V.   CONCLUSION

For the reasons set forth above, Petitioner's Section 2254 petition will be **DENIED**, Petitioner's motion for reconsideration will be **DENIED**, and Petitioner will be **DENIED** a certificate of appealability. An accompanying Order will be entered.

5/30/2023
Date

*Evelyn Padin*
Evelyn Padin, U.S.D.J.